## Batcheler et ux. v. Lally et ux.

*Louis Feldman* and *Charles L. Casper*, for complainants.

*Donald Mills* and *Raymond Lowery*, for respondents.

VALENTINE, P. J., February 6, 1948.—This proceeding originated by plaintiffs' application for a prelimi-

nary injunction, restraining the removal of certain articles from the premises 99 Claymont Avenue, Hanover Township, this county.

By agreement, the filing of an answer was waived and a stipulation of counsel entered into that the case be disposed of as on final hearing, and that the court "decide the question of title to the articles referred to in the bill".

## Findings of Fact

1. Plaintiffs are the owners of a certain piece of improved land situate in the Township of Hanover, Luzerne County, Pa., which was conveyed to them by defendants by deed dated June 2, 1947, and recorded in Luzerne County Deed Book 936, page 1, which premises are known as 99 Claymont Avenue, Hanover Township, Pa.

2. At the time of the conveyance aforesaid, an apartment on the first floor of said building was occupied by Edwin Lally and Rose Lally, his wife, defendants, and a second-floor apartment was then occupied by plaintiffs, Frederick A. Batcheler and Garnet Batcheler, his wife.

3. The building in question is a three-story apartment house and contains three five-room apartments. Each apartment is equipped with a gas range, screens, radiators, built-in cupboards and combination sink and laundry tubs. The front or main entrance of the building is equipped with a combination storm and screen door.

4. Prior to the purchase of said premises by plaintiffs they made application to the Wilkes-Barre Deposit and Savings Bank for, and later procured, a mortgage on said premises in order to obtain a portion of the purchase price.

5. Said mortgage provided, inter alia: "It is intended that this mortgage shall be a lien on and include all buildings or any other type of improvement now

on or hereafter to be placed on the above described premises, together with all fences, walks, drives, shrubbery, or any other improvement of any nature whatsoever placed thereon; also all plumbing, heating, electrical or any other type of improvement, fixtures or additions now attached to this property or that may be attached to the same hereafter from time to time during the life of this mortgage."

6. The radiators, which form a part of the steam heating plant, the storm and screen door, the window screens, the combination sink and laundry tubs and the built-in cupboards are fixtures and constitute part of the building.

7. The gas stoves, located in the various apartments, are personal property.

### Discussion

The question in controversy is whether the screen and storm door, window screens and other articles above enumerated, as contained in each apartment, passed to the purchaser by virtue of the conveyance of the building.

If the articles are fixtures, title to the same passed to plaintiffs as purchasers of the real estate. If the articles are regarded as personal property, defendants are the owners thereof and may lawfully remove the same from the building.

"Chattels used in connection with real estate are of three classes: first, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty: . . . Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty — to them the ancient maxim

*'Quicquid plantatur solo, solo cedit'* applies in full force: . . . Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation; in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable": Clayton v. Lienhard, 312 Pa. 433, at page 436.

The articles here in question may, we think, be considered as falling within the third class above enumerated.

In disposing of the question raised, sight must not be lost of the fact that we are here dealing with articles not furnished by a tenant, but installed by the owner. As between vendor and vendee, the rule for determining what is a fixture is to be construed most strongly against the seller. Articles connected with a building by the owner may pass to a purchaser, although if they had been installed by a tenant they might be regarded as removable by him.

### Radiators

The radiators are an integral part of the building, and were installed by the owner with the intent and purpose that they were to be attached to and become a part of the permanent steam plant contained therein. Fifty-four years ago in National Bank of Catasauqua v. North, 160 Pa. 303, it was held that radiators and valves connected with steam heating apparatus, in a dwelling house, were not fixtures attached to the realty. When that decision was rendered in 1894, dwelling houses were very largely heated by coal and wood stoves, rather than by steam heat. A heat plant installed in a modern apartment house must be regarded

as constituting an integral part of the realty, and as passing to the purchaser of the real estate. See Holland Furnace Co. v. Suzik, 118 Pa. Superior Ct. 406.

### Storm and Screen Door and Window Screens

Ordinary fly screens, such as are purchasable at the usual hardware store, and suitable for use in the windows of ordinary dwellings, are personal property and are not to be regarded as fixtures: Weaver v. Williams, 15 Northamp. 108. The screens here in question, however, were made specially for the windows in this particular apartment house and adapted for the same. They are, therefore, to be deemed fixtures, and as such pass with the realty.

The modern trend of authority is to hold that chattels adapted to and usable as a part of the realty to which they are annexed are regarded as fixtures: Roderick v. Sanborn, 106 Me. 159, 76 Atl. 263; Fratt v. Whittier, 58 Cal. 126.

In Fish Company v. Young et al., 127 Wis. 149, 106 N. W. 795, the rule is expressed as follows:

"The screens were manufactured specially for and fitted to the house, were adapted to its permanent enjoyment and placed there by the owner. It is true that (according to the findings) they were not physically attached or screwed on, but were simply fastened by buttons (although it is not quite clear how doors could be so attached and serve any useful purpose). Physical annexation, however, though always an important consideration, is not the sole test nor by any means the controlling test in determining the question of fixture or no fixture. The question of the intention of the party making the annexation is the principal consideration: Rinzel v. Stumpf, 116 Wis. 287, 93 N. W. 36. When the owner of a house orders screens to be manufactured and fitted to his house there can be

no serious doubt as to his intention. Though detachable for convenience during the winter months, the intention is unquestionably to permanently increase the comfort of the house and its desirability for residence purposes. The great majority of houses now built are provided with detachable fly screens manufactured for and specially fitted to the house by the owner and intended to be used thereon during the summer season, and it would be a strange doctrine which should hold that when such a house is sold the screens do not pass with the house as a part of the realty, but may be taken away by the vendor unless specially transferred to the vendee."

### Sink and Laundry Tubs

The combination sink and laundry tubs installed in each of the apartments are, we think, part of the real estate. A sink is as much a part of a kitchen as a kitchen cupboard. To remove the same would damage the building and make the kitchen unusable.

### Built-in Cupboards

The built-in cupboards are comparable to closets, and as such, we think, are a part of the real estate, and were acquired by the purchaser.

### Gas Ranges

Are the gas ranges, installed in each apartment, part of the realty, or are they personal property? In Vaughen v. Haldeman, 33 Pa. 522, it was stated:

"Gas-stoves are largely used for bath, and other rooms, and are necessarily connected with the gas pipes in the same way; but no one would think of saying that they were fixtures, which it would be waste to remove. It is, therefore, more simple to consider all these gas-fixtures, whether stoves, chandeliers, hall and entry lamps, drop-lights, or table-lamps, as

governed by the same rule as the articles for which they are substituted."

Whether such rule should be applied to a gas range installed by the owner of a building, depends, we think, upon the manner and type of the installation and the intention of the owner as manifested by his acts and conduct. We have not been advised as to the manner in which these gas ranges were attached to the building.

A gas range, when installed in a dwelling and connected with a supply pipe does not thereby become a fixture: Hook v. Bolton, 199 Mass. 244, 85 N. E. 175; Cosgrove v. Troescher, 62 App. Div. 123, 70 N .Y. S. 764; Central Union Gas Co. v. Browning, 210 N. Y. 10, 103 N. E. 822. The mode of construction of the building, and the use of certain type of gas range, might indicate that the same had been installed for permanent retention and use for the place in which it had been located, but no such condition has been shown to exist in the present case

Inasmuch as no evidence has been presented showing that the manner of the installation of the gas ranges indicated that they were made an integral part of the building, or that the general rule enunciated in the above authorities would not control, we conclude that they are personal property and did not pass to the purchasers of the real estate.

### Conclusions of Law

1. That plaintiffs, as purchasers of the real estate described in the bill, acquired title to the radiators, storm and screen door, window screens, combination sink and laundry tubs and built-in cupboards.

2. The title to the gas ranges, located in the three apartments contained in the building, did not pass to plantiffs as purchasers of the real estate. The stoves are personal property and are owned by defendants.

3. The respective parties should pay their own costs.

*Decree Nisi*

This case came on for hearing, was argued by counsel, and upon due consideration it is ordered, adjudged and decreed as follows:

1. That plaintiffs, as purchasers of the real estate described in the bill, acquired title to the radiators, storm and screen door, window screens, combination sink and laundry tubs and built-in cupboards.

2. The title to the gas ranges, located in the three apartments contained in the building, did not pass to plaintiffs as purchasers of the real estate. The ranges are personal property and are owned by defendants.

3. The respective parties should pay their own costs.